UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

RICHARD HOLLEN PRUITT,                )
                                      )
            Petitioner,               )     3:03-cv-0685-RLH-VPC
                                      )
vs.                                   )
                                      )     **ORDER**
DON HELLING, *et al.*,                )
                                      )
            Respondents.              )
                                      )
_____)

**I. Introduction**

This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, by Richard Pruitt, a Nevada prisoner. The action comes before the court with respect to its merits. The court will deny the petition.

**II. Facts and Procedural Background**

Petitioner was charged in the Third Judicial District Court for Lyon County with two counts of sexual assault on a child under the age of fourteen and one count of sexual assault, for alleged sexual molestation of his daughter, after a preliminary hearing was held on December 7, 1993. Exhibits 8, 12 and 48.[1] Petitioner proceeded to trial, and on October 30, 1995, the jury

---

[1] The exhibits cited in this order are those filed by respondents in support of their motion to dismiss and are located in the record at docket #11-19.

convicted him of all three counts as charged. Exhibits 52-58, 60-62. The trial court sentenced petitioner on November 27, 1995, to two terms of life imprisonment with parole eligibility in ten years for counts I and II, and to one term of life imprisonment with parole eligibility in five years for count III, with all counts running concurrently. Exhibit 69. The state district court entered a judgment of conviction on November 30, 1995. Exhibit 70.

Petitioner appealed, raising five claims: (1) the state denied petitioner a fair trial by knowingly failing to elicit the truth; (2) the statements of the district attorney in his closing argument amounted to prosecutorial misconduct; (3) the trial court's order prohibiting certain cross-examination violated petitioner's right to confront witnesses; (4) the district court committed reversible error in the admission of bad acts; and (5) cumulative errors deprived petitioner of a fair trial. Exhibits 72 and 82. The Nevada Supreme Court affirmed the judgment of conviction on February 27, 1998. Exhibit 95. Petitioner moved for rehearing, but the court denied rehearing on March 14, 1998. Exhibits 96 & 100. Remittitur issued on May 22, 1998. Exhibit 102.

Petitioner then filed a state petition for habeas corpus on May 14, 1999, arguing (1) trial counsel was ineffective for failing to interview and call Roberta Lamkin at trial; (2) trial counsel was ineffective for failing to call Denise Weathers and Megan Higgins as witnesses at trial; (3) trial counsel was ineffective for failing to provide evidence of the victim's prior sexual knowledge and for failing to call witnesses Carie Griffin and Kathryn Pruitt; (4) trial counsel was ineffective for failing to call Mike Higgins and Joyce Silva as witnesses; (5) a claim of cumulative error; and (6) and (7) newly discovered evidence. Exhibit 105. Petitioner also filed a supplemental habeas corpus petition, alleging additional witnesses counsel should have called to testify at trial. Exhibit 115. Petitioner then filed a second supplemental petition for writ of habeas corpus. Exhibit 146.

On April 10 and 11, 2002, the state district court held an evidentiary hearing on the petition for writ of habeas corpus. Exhibits 155 and 156. The state district court then dismissed the petition. Exhibit 168. Petitioner appealed, and the Nevada Supreme Court affirmed the lower court's dismissal of the petition. Exhibits 170 and 199. Remittitur issued on September 19, 2003.

Exhibit 204.

Petitioner filed a federal habeas corpus petition with this court on December 12, 2003 (docket #1).  On March 18, 2005, respondents moved to dismiss the petition, arguing several grounds were unexhausted or failed to state a claim (docket #27).  The court granted the motion to dismiss, finding grounds two, three, and four were unexhausted and grounds seven and eight failed to state a claim (docket #31).  Petitioner moved to reconsider, and abandoned grounds two and four (docket #32).  The court denied the motion to reconsider (docket #35).  Petitioner then abandoned ground three (docket #36).  Respondents have now answered petitioner's remaining claims (docket #39) and petitioner has filed a traverse (docket #45).

**III.  Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "'if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases'" or "'if the state court confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent "'if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The unreasonable application clause "requires the state court decision to be more than incorrect or erroneous"; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409). *See also Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004).

In determining whether a state court decision is contrary to, or an unreasonable application of, federal law, this Court looks to a state court's last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512 F.3d 1204, 1209-10 (9th Cir. 2008) (en banc). When a state court has not "explained its reasoning on a particular claim" the federal court conducts "an independent review of the record to determine whether the court's decision was objectively unreasonable." *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006) (citing *Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004)).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**IV. Discussion**

    **A. Ground One**

In his first claim for relief petitioner alleges that his conviction and sentence are a product of a violation of his Fifth, Sixth, and Fourteenth Amendment rights, as he was not allowed to introduce evidence that he caught the victim in bed with her boyfriend engaging in the same sexual activity she later attributed to the petitioner. Petitioner contends that the victim filed a formal

4

accusation against him because he did not allow the victim to have further contact with her boyfriend after she was caught. Petitioner asserts that he wanted to introduce evidence that the victim had engaged in sexual acts with her boyfriend Chuck in order to show that the victim had knowledge of sexual acts from someone else. Furthermore, petitioner states that he obtained newly discovered information from a person named Carie Griffin that in the summer of 1991 the victim engaged in sexual acts with two other boys named Mark and Craig. Petitioner states that this evidence would have shown bias on the part of the victim, and a motivation to present false charges.

Prior to trial petitioner filed a motion to allow cross-examination of the victim regarding her sexual activity. Exhibit 15. The trial court held a hearing on the issue, and the court found that the evidence petitioner wished to introduce, of the victim's sexual activities with her boyfriend, would violate the rape shield statute. Exhibits 19 and 21.

Petitioner raised the instant ground for relief in his direct appeal, and the Nevada Supreme Court rejected the claim, stating:

> Appellant next contends that his right of confrontation was infringed when he was denied the opportunity to cross-examine his daughter regarding alternate sources of her sexual knowledge. We conclude that this argument is without merit. Appellant's argument that his twelve year-old daughter acquired sexual knowledge through her relationship with her boyfriend, and then used this knowledge to assert unfounded allegations against him, is undermined by the fact that evidence adduced at trial demonstrated that the victim had revealed to a friend that her father was sexually abusing her months before she began dating her boyfriend. Thus, there was no proper purpose other than to impermissibly impeach the victim's general credibility and chastity. *See* NRS 50.090. *Compare Summitt v. State*, 101 Nev. 159, 697 P.2d 1374 (1985) (concluding that the district court erred in denying appellant the opportunity to introduce evidence pertaining to the five year-old victim's previous sexual assault where appellant's intent was not to impeach the victim's credibility and chastity but to demonstrate that the victim had independent sources of sexual knowledge). Accordingly, we conclude that the district court did not commit manifest error in denying appellant the opportunity to cross-examine the victim regarding alternate sources of her sexual knowledge.

Exhibit 95 at 2-3. Furthermore, on appeal from the lower court's dismissal of the state habeas corpus petition the Nevada Supreme Court found the following:

> With regard to the evidence of the sexual knowledge Pruitt's daughter allegedly acquired during the August 1991 camping trip, this evidence would not be admissible because his daughter had already told a friend prior to this camping trip that Pruitt had molested her. Accordingly, as this court concluded with regard to the evidence of sexual knowledge Pruitt's daughter allegedly acquired from her teenage boyfriend, there would be no proper purpose for admitting this evidence other than to impermissibly impeach her character and chastity. [fn 7: *See Summitt v. State*, 101 Nev. 159, 163-64, 697 P.2d 1374, 1377 (1985) (holding that evidence of a victim's prior sexual experiences was admissible to demonstrate sexual knowledge in connection with alleged fabrication, not to impeach the witness's character for chastity).

Exhibit 199 at 4.

The Confrontation Clause "guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). The main purpose of the confrontation of witnesses is to allow a defendant the opportunity to cross-examine witnesses. *Id.* (citing *Davis v. Alaska*, 415 U.S. 308 (1974)). The right to cross-examine "includes the opportunity to show that a witness is biased, [or that] the testimony is exaggerated or unbelievable." *Fowler v. Sacramento County Sheriff's Dept.*, 421 F.3d 1027, 1035 (9th Cir. 2005) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987)). Furthermore, exposure of a witness's motivation for testifying is a proper and important function of the right to cross-examine a witness. *Davis*, 415 U.S. at 316-17. However, the Confrontation Clause does not prevent a trial court "from imposing any limits on defense counsel's inquiry into the [reliability or credibility] of a prosecution witness." *Id.* Trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or marginally relevant." *Id.* (citing *Van Arsdall*, 475 U.S. at 679).

To determine whether a criminal defendant's Sixth Amendment right to confrontation has been violated by limiting cross-examination of a witness, a court must determine whether: (1) the evidence was relevant; (2) there were other legitimate interests outweighing the defendant's interests in presenting the evidence; and (3) the exclusion of the evidence left the jury with sufficient

6

1  information to assess the credibility of the witness. *United States v. James*, 139 F.3d 709, 713 (9th
2  Cir. 1998) (quoting *Wood v. Alaska*, 957 F.2d 1544, 1549-50 (9th Cir. 1992)); *Morales v. Scribner*,
3  621 F.Supp.2d 808, 824-25 (N.D. Cal. 2008).  In the instant case the evidence petitioner wished to
4  introduce about the victim's prior sexual history was not relevant, as the victim's sexual experiences
5  with her boyfriends occurred after the sexual assault had already occurred.  Moreover, the sexual
6  history of the victim had no bearing on her credibility as petitioner was not alleging that she had
7  made prior false accusations or that she had previous consensual sexual encounters with the
8  petitioner. *See Morales*, 621 F.Supp.2nd at 824-25; *Wood*, 957 F.2d at 1551 (discussing how a
9  sexual assault victim's sexual history with others only shows a "generalized attitude toward sex that
10 says little if anything about the victim's attitude toward sex with the defendant").  The trial court's
11 limitation on petitioner's ability to cross-examine the victim about her prior sexual activity did not
12 violate the Confrontation Clause.  Moreover, there is no indication that the state district court's
13 limitation on the defense's ability to cross-examine the victim had a substantial and injurious effect
14 on the jury verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

15         Furthermore, the factual findings of the state court are presumed correct.  28 U.S.C. §
16 2254(e)(1).  A state court's factual determination may not be overturned unless this court cannot
17 "reasonably conclude that the finding is supported by the record. *Cook v. Schriro*, 516 U.S. 802, 816
18 (9th Cir. 2008); *Miller-El v. Cockrell*, 537 U.S. 32 (2003) (stating "[f]actual determinations by state
19 courts are presumed correct absent clear and convincing evidence to the contrary" and a decision
20 made by a state court based upon a factual determination "will not be overturned...unless objectively
21 unreasonable in light of the evidence presented in the state-court proceeding").  Petitioner has not
22 shown that the Nevada Supreme Court's decision with respect to this claim was an unreasonable
23 application of federal law.  Moreover, petitioner did not meet his burden in demonstrating that the
24 court's decision was unreasonable in light of the evidence presented in the state court proceedings.
25 This court will deny ground one.
26 ///

**B.  Ground Five**

In petitioner's fifth ground for relief he appears to be claiming that he was deprived of effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendment, because his trial counsel failed to adequately undermine or prevent the prior bad act testimony of Tamara Mathes and Gypsy Gentry at trial, who each testified to separate episodes wherein the petitioner allegedly engaged in inappropriate physical contact with them.  The underlying grounds, ground three and four, in which petitioner alleges that the trial court erred in allowing Mathes and Gentry to testify and this error rendered the trial fundamental unfair, were found to be unexhausted, and were abandoned..

In order to prove ineffective assistance of counsel, petitioner must show (1) counsel acted deficiently, in that his attorney made errors so serious that his actions were outside the scope of professionally competent assistance and (2) the deficient performance prejudiced the outcome of the proceeding.  *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).  Regarding the first prong – commonly known as the "effectiveness prong" – the *Strickland* Court expressly declined to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution.  *Id*.  Defense counsel's duties are not to be defined so exhaustively as to give rise to a "checklist for judicial evaluation ... [because] [a]ny such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id*.

The *Strickland* Court instructed that review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the "distorting effects of hindsight." *Id*. at 689.  A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] the [petitioner] must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id*. (citation omitted).

Construing the Sixth Amendment to guarantee not effective counsel per se, but rather

a fair proceeding with a reliable outcome, the *Strickland* Court concluded that demonstrating that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance.  In order to satisfy *Strickland's* second prong, the defendant must show that the attorney's sub-par performance prejudiced the defense.  *Id*. at 691-92.  The test is whether there is a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different.  *Id*. at 691-94.  The Court defined reasonable probability as "a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,' . . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.*

Prior to trial the state moved for a *Petrocelli* hearing to determine whether testimony of several child victims regarding other acts of sexual activity would be admissible at trial.  Exhibit 25.  Defense counsel opposed the motion.  Exhibit 26.  The trial court held a hearing on April 13, 1005 and May 1, 1995.  Exhibits 34 and 35.  The state district court determined that testimony of Tamara Mathes and Gypsy Gentry would be admissible at trial.  Exhibit 35.  In his direct appeal petitioner alleged that the district court erred in admitting the testimony of Mathes and Gentry.  The Nevada Supreme Court found the claim to be without merit, stating:

> Appellant next argues that the district court erred in allowing two other young girls, similar in age to the victim, to testify that the appellant had inappropriately fondled and touched them. Based on our review of the record, we conclude that the district court did not commit manifest error in admitting such testimony. From evidence adduced during the *Petrocelli* hearings conducted in April and May, 1995, the district court concluded that the State had proven by clear and convincing evidence that appellant had inappropriately touched and fondled these girls at his home in 1991.

> Because appellant's misconduct towards these girls constituted sexually aberrant behavior, the district court did not err by concluding that such evidence was relevant and that the probative value of such testimony was not substantially outweighed by the danger of unfair prejudice. Accordingly, we conclude that the district court did not err in admitting such evidence. *See Keeney v. State*, 109 Nev. 220, 228-29, 850 P.2d 311, 316-17 (1993).

Exhibit 95.

Petitioner argued in his state habeas petition that counsel should have called Denise Weathers, Danaye Spencer, and Kathy Dow as witnesses. Petitioner stated that these witnesses would have testified that the activities relating to Mathes were not sexual activities but instead constituted non-sexual horseplay, and therefore Mathes should not have been allowed to testify. After holding an evidentiary hearing on the issue, the state district court denied the claim. Exhibits 155, 156 and 168. On appeal, the Nevada Supreme Court affirmed the lower court's denial of the claim, finding:

> First, the district court did not err when it concluded that NRS 176.515(3) barred consideration of Pruitt's petition based upon newly discovered evidence. NRS 176.515(3) states that "[a] motion for a new trial based on the ground of newly discovered evidence may be made only within 2 years after the verdict or finding of guilt." Here, since Pruitt was found guilty on November 27, 1995, and his petition for post-conviction relief was filed more than two years later on May 14, 1999, the district court correctly concluded that it was not obligated to consider the newly discovered evidence. Moreover, Pruitt's reliance upon the narrow exception articulated in *Snow v. State* [fn 1: 105 Nev. 521, 779 P.2d 96 (1989) is misplaced because it is not applicable to non-capital cases, such as this one. In *Snow*, we stated:
>
>> [W]e are prepared to rule that where a prisoner *who has been sentenced to death* discovered new evidence tending to prove that his conviction was illegally obtained, such evidence may be brought before the court for consideration, even after the two-year time limit imposed by NRS 176.515(3) has run, in a petition for writ of habeas corpus. [fn 2: *Id.* at 523, 779 P.2d at 97 (emphasis added).
>
> Therefore, Pruitt's petition is barred by NRS 176.515(3).
>
> Second, even if Pruitt's newly discovered evidence claim were not barred by the two-year time limit in NRS 176.515(3), the district court did not abused its discretion when it concluded that Pruitt's petition was without merit because the newly discovered evidence was cumulative with the evidence that had been produced at trial. We have held that before

10

newly discovered evidence can justify a new trial, the evidence must be:

> [N]ewly discovered; material to the defense; such that even with the exercise of reasonable diligence it could not have been discovered and produced for trial; non-cumulative; such as to render a different result probable upon retrial; not only an attempt to contradict, impeach, or discredit a former witness, unless the witness is so important that a different result would be reasonably probable; and the best evidence the case admits. [fn 3: *Sanborn v. State*, 107 Nev. 399, 406, 812 P.2d 1279, 1284-85 (1991) (footnote omitted).]

Contrary to Pruitt's assertions, the fact that newly discovered evidence comes from another witness, [fn 4: *See Batson v. State*, 113 Nev. 669, 677-78, 941 P.2d 478, 484 (1997) (holding that a witness's testimony was cumulative with the testimony of two other witnesses because it merely reiterated their testimony).] or from a different type of evidence altogether, [fn 5: *See Owens v. State*, 96 Nev. 880, 882, 620 P.2d 1236, 1237-38 (1980) (holding that physical evidence admitted at trial to establish the defendant's identity was cumulative with eyewitness testimony elicited for the same purpose).] does not make that evidence non-cumulative. Evidence is cumulative if it is offered to prove a point that has already been proven by other evidence. [fn 6: *Black's Law Dictionary*, 343 (5th ed. 1979).] Here, Pruitt produced evidence at the evidentiary hearing to demonstrate that: (1) Pruitt's prior conduct with two other girls was merely "non-sexual horseplay"; (2) his daughter had independently acquired sexual knowledge prior to the time she made her formal accusations to the police in 1993, but not before the time she told a friend during a camping trip in late July 1991 of her alleged molestation by Pruitt; (3) his daughter and her teenage boyfriend hated Pruitt; and (4) inconsistencies existed between his daughter's testimony and the physical evidence and other witness testimony.

However, all of this evidence is cumulative because other evidence was admitted at trial to prove the same propositions. For instance, at trial: (1) Pruitt's former wife testified about how Pruitt liked to "roughhouse" and "tease" children and family members; (2) there was testimony regarding tension between Pruitt and his daughter, and about how angry his daughter's teenage boyfriend was at being separated from her; and (3) Pruitt's trial counsel offered extensive evidence, such as a blueprint of Pruitt's house and a video and aerial map of Fort Churchill Road and other witness testimony to highlight the inconsistencies in the testimony of Pruitt's daughter.

...

Third, the district court did not err when it concluded that Pruitt's ineffective assistance claim was without merit because his counsel acted with diligence and competence. When reviewing a claim of ineffective assistance, we generally adhere to the "reasonably effective assistance" standard articulated in *Strickland v. Washington*. [fn 9: 466 U.S. 668 (1984).] Under this standard, a defendant claiming ineffective assistance

11

> must demonstrate that:
>
>> (1) counsel's performance was deficient, i.e., counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defendant, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [fn 10: *McNelton v. State*, 115 Nev. 396, 403, 990 P.2d 1263, 1268 (1999) (quoting *Strickland*, 466 U.S. at 694).]
>
> We will defer to a district court's factual findings as to claims of ineffective assistance; however, since ineffective assistance claims present mixed questions of law and fact, we will still exercise independent review. [fn 11: *Id.*] Nonetheless, "[c]ounsel's strategy decisions are not subject to challenge absent extraordinary circumstances." [fn 12: *Doyle v. State*, 116 Nev. 148, 160, 995 P.2d 465, 473 (2000).]
>
> While Pruitt alleges that his counsel rendered ineffective assistance by permitting the admission of his prior bad acts, his counsel opposed the admission of Pruitt's prior conduct as to the other girls at every opportunity. Ultimately, this court concluded that the evidence was admissible, and accordingly, Pruitt's minor criticisms regarding his counsel's strategic decisions do not support a viable claim of ineffective assistance. [fn 13: *See id*.] With regard to the admission of the prior consistent statements of Pruitt's daughter, these statements were admissible to show a lack of recent fabrication [fn 14: *See* NRS 51.035(2)(b) (allowing the admission of prior consistent statements to rebut a charge of recent fabrication).] and, accordingly, Pruitt was not prejudiced by his counsel's failure to oppose the admission of this evidence. Pruitt's remaining allegations as to his counsel's strategic decisions are without merit.

Exhibit 199.

Petitioner has not shown that the Nevada Supreme Court's determination was objectively unreasonable. Defense trial counsel testified at the evidentiary hearing that he had believed that the prior bad acts would not be admitted at trial because he was counsel on one of the Nevada Supreme Court cases that discussed such prior bad acts, and he thought that the acts were uncharged, unfounded, unsubstantiated and had no connection to the conduct in this case. Exhibit 156, T 212. Counsel stated that he did not consider calling other witnesses who were percipient to the conduct Mathes alluded to in her testimony, because he did not believe the acts would be admitted at trial. *Id.* Counsel also testified that he thought he was aware that there were witnesses to the Mathes incident. *Id.* at T 214. Petitioner has not shown that counsel failed to adequately prevent

the prior bad act testimony from being admitted at trial.

Counsel did oppose the motion in limine to allow prior bad acts at trial, but determined that he would not call witnesses at the hearing. The United States Supreme Court has noted that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). Furthermore, the Court stated that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id. See also Wiggins v. Smith*, 539 U.S. 510, 521-23 (2003) (stating that a court must determine whether counsel's tactical decision to not present mitigating evidence at sentencing was reasonable). Based upon a review of the entire record, the Nevada Supreme Court did not unreasonably apply federal law in finding that counsel did not perform deficiently.

Furthermore, the factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). A state court's factual determination may not be overturned unless this court cannot "reasonably conclude that the finding is supported by the record. *Cook v. Schriro*, 516 U.S. 802, 816 (9th Cir. 2008); *Miller-El v. Cockrell*, 537 U.S. 32 (2003) (stating "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary" and a decision made by a state court based upon a factual determination "will not be overturned...unless objectively unreasonable in light of the evidence presented in the state-court proceeding"). Petitioner has not shown that the Nevada Supreme Court's decision with respect to this claim was an unreasonable application of *Strickland*. Moreover, petitioner did not meet his burden in demonstrating that the court's decision was unreasonable in light of the evidence presented in the state court proceedings. This court will deny ground five.

**C. Ground Six**

In his sixth ground for relief petitioner alleges his conviction is in violation of his

1  Fifth, Sixth, and Fourteenth Amendment rights due to counsel's failure to interview and investigate
2  witnesses Joyce Silva, Roberta Lamkin and Megan Higgins.  Petitioner states that he was not aware
3  that these witnesses had information relating to his case at the time of the trial.

4  At the evidentiary hearing Megan Higgins testified.  Exhibit 155, T 8.  Witness
5  Higgins told the court that in September 1992 she had a conversation with the victim in a church
6  parking lot.  *Id.* at T 10-12.  The victim told Higgins that although Mathes had accused her father of
7  sexual abuse, her father had not abused Mathes.  *Id*.  Roberta Lamkin also testified at the evidentiary
8  hearing.  *Id.* at T 13.  Lamkin worked with the victim at a restaurant.  *Id.* at T 15.  One day when
9  Lamkin was driving the victim home from work they had a conversation about the petitioner and the
10 victim stated that he had not sexually abused her.  *Id.* at 16-17.  The victim also told Lamkin that she
11 wished her father would be more lenient with her.  *Id.* at T 17.  Finally, Joyce Silva testified at the
12 hearing that she owned the restaurant where the victim worked.  *Id.* at T 73.  Silva knew that the
13 victim was dating her boyfriend Chuck at the time her father was arrested.  *Id.* at T 74.  Silva
14 testified that the victim had stated that she was going to get back at her father for not letting her go
15 out with Chuck.  *Id.* at T 75.

16 Defense trial counsel stated that he had presented evidence at trial that the victim had
17 denied that any sexual abuse had occurred.  Exhibit 156, T 240.  Counsel also testified that he
18 presented evidence that the victim and her boyfriend Chuck were angry with the petitioner and had a
19 motive to make up the allegations.  *Id.*

20 On appeal the Nevada Supreme Court affirmed the denial of this ground.  Exhibit
21 199.  As was quoted above, in relation to ground five, the Nevada Supreme Court found that the
22 petition was barred because the "newly discovered evidence" was not raised within two years after
23 the finding of guilt.  *Id.*  Furthermore, the court found that even if the newly discovered evidence was
24 timely raised, the evidence was cumulative to evidence raised at trial.  *Id.*  Finally, the court stated
25 that the petitioner had not shown that counsel's strategic decisions were deficient.  *Id.*

26 The Nevada Supreme Court's determination was not an objectively unreasonable

application of federal law, as determined by United States Supreme Court precedent. Petitioner states in his petition that he did not know, at the time of trial, that these witnesses had information that was relevant to his defense. Therefore, counsel would not be ineffective for failing to investigate these witnesses if it was not known at the time of trial that these witnesses had helpful information. Moreover, the court found that the testimony of these witnesses was cumulative. The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to ground six.

### D. Ground Nine

In his ninth ground for relief petitioner alleges that his conviction is in violation of his Fifth, Sixth, and Fourteenth Amendment rights due to the fact that there was no corroboration of the victim's testimony apart from Kevin's testimony and the victim's out-of-court statements made to witnesses Rehdorf and Mathes. Petitioner states that the victim's out-of-court statements were inadmissible hearsay. Petitioner then contends that trial counsel was ineffective for failing to prevent the admission of the hearsay evidence.

The Nevada Supreme Court affirmed the lower court's denial of this claim, stating the following:

> With regard to the admission of the prior consistent statements of Pruitt's daughter, these statements were admissible to show a lack of recent fabrication [fn 14: *See* NRS 51.035(2)(b) (allowing the admission of prior consistent statements to rebut a charge of recent fabrication).] and, accordingly, Pruitt was not prejudiced by his counsel's failure to oppose the admission of this evidence. Pruitt's remaining allegations as to his counsel's strategic decisions are without merit.

Exhibit 199. The Nevada Supreme Court's determination is not objectively unreasonable. Petitioner contends that the victim's out-of-court statements were inadmissible hearsay under NRS

15

1  51.035(2)(b).  The Nevada Supreme Court determined that the statements were *admissible* under that
2  same Nevada statute.  When a state interprets its own laws or rules, no basis for federal habeas
3  corpus relief is presented, as no federal constitutional question arises.  *Burkey v. Deeds*, 824 F. Supp.
4  190, 192 (D. Nev. 1993) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *Oxborrow v.*
5  *Eikenberry*, 877 F.2d 1395 (9th Cir. 1999) ("errors of state law do not concern us unless they rise to
6  the level of a constitutional violation").  Moreover, a state law issue cannot be mutated into one of
7  federal constitutional law merely by invoking the specter of a due process violation.  *Langford v.*
8  *Day*, 110 F.3d 1380, 1389 (9th Cir. 1996), *cert. denied*, 522 U.S. 881 (1997).  Petitioner must
9  demonstrate the existence of federal constitutional law which establishes the right in question.   It
10 appears that the Nevada Supreme Court was interpreting the Nevada statutes when it determined that
11 the victim's prior consistent statements were admissible and that counsel was not ineffective for
12 objecting.  Therefore, no federal question has been raised.
13         Even if a federal question was properly raised in this ground for relief, petitioner
14 cannot show that he is entitled to relief.  The Nevada Supreme Court found the victim's out-of-court
15 statements were admissible to show a lack of recent fabrication.  The factual findings of the state
16 court will be presumed correct unless the petitioner rebuts this presumption with clear and
17 convincing evidence. 28 U.S.C. § 2254(e)(1).  As petitioner has not shown that the lower court's
18 decision was unreasonable based on the evidence presented in the state court, ground nine will be
19 denied.

**V.  Certificate of Appealability**

21         In order to proceed with an appeal from this court, petitioner must receive a certificate
22 of appealability.  28 U.S.C. § 2253(c)(1).  Generally, a petitioner must make "a substantial showing
23 of the denial of a constitutional right" to warrant a certificate of appealability.  *Id.*  The Supreme
24 Court has held that a petitioner "must demonstrate that reasonable jurists would find the district
25 court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.
26 473, 484 (2000).

The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

The court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the court determines that none meet that standard. Accordingly, the court will deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus (docket #1) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk shall **ENTER JUDGMENT ACCORDINGLY.**

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY**.

Dated this  16th  day of September, 2009.

_____
CHIEF UNITED STATES DISTRICT JUDGE